**JS-6**

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| U-HAUL CO. OF CALIFORNIA, and AMERCO REAL ESTATE COMPANY, | Case No. CV 06-06574 VBF |
| Plaintiffs, | |
| v. | **JUDGMENT** |
| BARRY ROSS, TRUSTEE OF THE LOUIS ROSS & ALICE ROSS FAMILY TRUST, et al., | |
| Defendant, | |

AND RELATED COUNTERCLAIMS

This action came on for a trial before a jury on January 6, 2009, on the claims of Plaintiffs, U-Haul Co. of California and Amerco Real Estate Company (collectively "Plaintiffs" or "U-Haul"), and counterclaims of Defendant, Barry Ross, Trustee of the Louis Ross & Alice Ross Family Trust ("Defendant" or "Ross").

On January 21, 2009, the jury returned its verdict in accordance with the Court's instructions as follows:

## VERDICT FORM 1
## TRESPASS

We answer the questions submitted to us as follows:

1.  Did U-Haul own, lease, occupy, or control the property?
  **X** Yes   _____ No

If your answer to question 1 is yes, then answer question 2.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2.  Did Ross negligently cause or allow a hazardous substance, hazardous waste, pollutant, or contaminant to enter U-Haul's property?
  _____ Yes   **X** No

If your answer to question 2 is yes, then answer question 3.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3.  Did the hazardous substance, hazardous waste, pollutant, or contaminant enter the property without U-Haul's permission?
  _____ Yes   _____ No

If your answer to question 3 is yes, then answer question 4.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4.  Did U-Haul suffer harm?

If your answer to question 4 is yes, then answer question 5.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

5. Was Ross's conduct a substantial factor in causing harm to U-Haul?

\_\_\_\_\_Yes           \_\_\_\_\_ No

If your answer to question 5 is yes, then answer question 6.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

6. Is the condition reasonably abatable?

\_\_\_\_\_Yes           \_\_\_\_\_ No

Whether your answer to question 6 is yes or no, answer question 7.

7. What are U-Haul's damages?

   Costs incurred in addressing and repairing the condition after October 16, 2003:

   $_____

## VERDICT FORM 2
## PRIVATE NUISANCE

We answer the questions submitted to us as follows:

1. Did U-Haul, own, lease, occupy, or control the property?

  **X**  Yes           \_\_\_\_\_ No

If your answer to question 1 is yes, then answer question 2.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2. Did Ross, by acting or failing to act, create a condition that was harmful to health, indecent or offensive to the senses, or an obstruction to the free use of property, or did Ross act negligently after learning of such a condition?

  **X**  Yes           \_\_\_\_\_ No

3

If your answer to question 2 is yes, then answer question 3.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3. Did this condition interfere with U-Haul's use or enjoyment of its land?

 __X__ Yes          _____ No

If your answer to question 3 is yes, then answer question 4.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4. Did U-Haul consent to Ross's conduct?

 _____ Yes          __X__ No

If your answer to question 4 is no, then answer question 5.

If you answered yes, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

5. Would an ordinary person have been reasonably annoyed or disturbed by Ross's conduct?

 __X__ Yes          _____ No

If your answer to question 5 is yes, then answer question 6.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

6. Did U-Haul suffer harm?          **YES**

If your answer to question 6 is yes, then answer question 7.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

7. Was Ross's conduct a substantial factor in causing harm to U-Haul?

 __X__ Yes          _____ No

If your answer to question 7 is yes, then answer question 8.

If you answered no, stop here, answer no further questions on this form, and have the

1. presiding juror sign and date this form.
2. 8.Did the seriousness of the harm outweigh the public benefit of Ross's conduct?
3. __X__ Yes_____ No
4. If your answer to question 8 is yes, then answer question 9.
5. If you answered no, stop here, answer no further questions on this form, and have the
6. presiding juror sign and date this form.
7. 9.Is the condition reasonably abatable?
8. __X__ Yes_____ No
9. Whether your answer to question 9 is yes or no, answer question 10.
10. 10.What are U-Haul's damages?
11. Costs incurred in addressing and repairing the condition after October 16, 2003:
12. **$487,386.71**
13.
14. **VERDICT FORM 3**
15. **PUBLIC NUISANCE**
16. We answer the questions submitted to us as follows:
17. 1.Did Ross create or help create and maintain a condition resulting in polluted
18. groundwater, or did Ross act negligently after learning of such a condition?
19. __X__ Yes_____ No
20. If your answer to question 1 is yes, then answer question 2.
21. If you answered no, stop here, answer no further questions on this form, and have the
22. presiding juror sign and date this form.
23. 2.Did U-Haul consent to Ross's conduct?
24. _____ Yes__X__ No
25. If your answer to question 2 is no, then answer question 3.
26. If you answered yes, stop here, answer no further questions on this form, and have the
27. presiding juror sign and date this form.
28.

5

JUDGMENT
CASE NO. CV 06-06574 VBF (VBKX)

3.  Did U-Haul suffer harm that was different from the type of harm suffered by the general public?

__X__ Yes          _____ No

If your answer to question 3 is yes, then answer question 4.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4.  Was Ross's conduct a substantial factor in causing U-Haul's harm?

_____Yes          __X__ No

If your answer to question 4 is yes, then answer question 5.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

5.  Is the condition reasonably abatable?

_____Yes          _____ No

Whether your answer to question 5 is yes or no, answer question 6.

6.  What are U-Haul's damages?

   Costs incurred in addressing and repairing the condition after October 16, 2003:

   $_____

## VERDICT FORM 4
## NEGLIGENCE/EQUITABLE INDEMNITY

We answer the questions submitted to us as follows:

1.  Was Ross negligent?

_____Yes          __X__ No

If you answered yes to question 1, then answer question 2.  If you answered no to question 1, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2.  Did U-Haul suffer harm?

6

If your answer to question 2 is yes, then answer question 3.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3.   Was Ross's negligence a substantial factor in causing harm to U-Haul?

_____Yes          _____ No

If you answered yes to question 3, then answer question 4.  If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4.   What are U-Haul's total damages?  Do not reduce the damages based on the fault, if any, of U-Haul or others.

    Costs incurred in addressing and repairing the condition since October 16, 2003:                                                          $_____

    Future costs of repairing or restoring the property:     $_____

If U-Haul has proved any damages, then answer question 5.  If U-Haul has not proved any damages, then stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

5.   Was U-Haul negligent?

_____Yes          _____ No

If your answer to question 5 is yes, then answer question 6.  If you answered no, answer question 7.

6.   Was U-Haul's negligence a substantial factor in causing its harm?

_____Yes          _____ No

If your answer to question 6 is yes, then answer question 7.  If your answer is no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

7.   What percentage of responsibility for U-Haul's harm do you assign to the following? Insert a percentage for only those who received "yes" answers in

questions 1 or 5:

    Ross:                                                  _____%

    U-Haul                                                _____%

    TOTAL:                                             100 %

## VERDICT FORM 5
## EQUITABLE INDEMNITY

We answer the questions submitted to us as follows:

1.     Did U-Haul negligently cause or allow hazardous substances, pollutants, or contaminants to be released at the U-Haul site?

  **X**  Yes          _____ No

If you answered yes to question 1, then answer question 2.  If you answered no to question 1, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

2.     Did Ross suffer harm?    **YES**

If your answer to question 2 is yes, then answer question 3.

If you answered no, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

3.     Did U-Haul's conduct cause Ross to suffer damages for which U-Haul should be responsible?

_____Yes         **X**  No

If you answered yes to question 3, then answer question 4.  If you answered no to question 3, stop here, answer no further questions on this form, and have the presiding juror sign and date this form.

4.     What are Ross's total damages?  Do not reduce the damages based on the fault, if any, of Ross or others.

    Costs incurred by Ross in addressing and repairing the condition caused by U-

1      Haul after October 16, 2003:                                    $_____

2 If Ross has proved any damages, then answer question 4.  If Ross has not proved any

3 damages, then stop here, answer no further questions on this form, and have the

4 presiding juror sign and date this form.

5 5. Was Ross negligent?

6 _____Yes          _____ No

7 If your answer to question 5 is yes, then answer question 6.  If you answered no,

8 answer question 7.

9 6. Was Ross' negligence a substantial factor in causing his harm?

10 _____Yes          _____ No

11 If your answer to question 6 is yes, then answer question 7.  If your answer is no, stop

12 here, answer no further questions on this form, and have the presiding juror sign and

13 date this form.

14 7. What percentage of responsibility for Ross's harm do you assign to the

15 following?

16     Ross:                                    _____%

17     U-Haul                                   _____%

18     TOTAL:                                   100 %

19 8. Could Ross have avoided any of his damages with reasonable efforts or

20 expenditures?

21 _____Yes          _____ No

22 If your answer to question 8 is yes, then answer question 9.

23 If you answered no, stop here, answer no further questions on this form, and have the

24 presiding juror sign and date this form.

25 9. What amount of its damages could Ross have avoided with reasonable efforts

26 or expenditures?

27 $_____

28

9

JUDGMENT
CASE NO. CV 06-06574 VBF (VBKX)

Prior to the return of the jury's verdict, the parties by stipulation dismissed their respective claims for unjust enrichment (Count V of Plaintiffs' Second Amended Complaint [Docket No. 46] and the Sixth Claim of Defendant's First Amended Counterclaim [Docket No. 34]), and the Court dismissed Plaintiffs' negligence *per se* claim (Count X of Plaintiffs' Second Amended Complaint [Docket No. 46]) pursuant to Fed. R. Civ. P. 50 [Docket No. 217].

Subsequently, the Court requested and received further briefing from the parties concerning the claims and requests for relief to be determined by the Court. On February 12, 2009, this Court entered its Memorandum of Decision and Findings of Fact and Conclusions of Law After Bench Trial on Equitable Claims and Defenses, which is incorporated as if fully restated herein.

As used herein, the term "U-Haul Site" means the property located at 11716 Long Beach Boulevard, Lynwood, California, and the term "Garfield Express Site" means the property located at 11600-11620 Long Beach Boulevard, Lynwood, California. The Plaintiffs and Counterclaim Defendants in this action are Amerco Real Estate Company and U-Haul Co. of California (hereinafter "Plaintiffs" or "U-Haul"). The Defendant and Counterclaimant is Barry Ross, Trustee of the Louis Ross & Alice Ross Family Trust (hereinafter "Defendant" or "Ross")

Accordingly, based on the jury's verdict and the evidence presented, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1. On the Plaintiffs' Second Amended Complaint, judgment is entered in favor of the Defendant and against the Plaintiffs on the following Counts: Count I (cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9601 *et seq.*,);

1    Count II (declaratory relief under CERCLA ); Count III (indemnity under the
2    Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Cal.
3    Health & Safety Code §25300 *et seq.*); Count IV (common law/equitable
4    indemnity); Count VII (continuing public nuisance); Count VIII (continuing
5    trespass); and Count IX (negligence).

7    2.   With respect to Count VI of the Plaintiffs' Second Amended Complaint
8    (continuing private nuisance), judgment is entered in Plaintiffs' favor and
9    against Defendant in accordance with Verdict Form 2, and Plaintiffs are
10   awarded damages in the amount of $487,386.71 against the Defendant.
11   Plaintiffs' request for injunctive relief is denied.

13   3.   On the Defendant's First Amended Counterclaim, judgment is entered in
14   favor of the Plaintiffs and against Defendant on the following Claims: First
15   Claim (contribution under CERCLA), Second Claim (declaratory relief under
16   CERCLA), Third Claim (contribution/indemnity under HSAA),  Fourth Claim
17   (declaratory relief under HSAA), and Fifth Claim (equitable indemnity).

19   4.     With respect to Count XI of Plaintiffs' Second Amended Complaint and
20   the Seventh Claim of Defendant's First Amended Counterclaim, both being
21   claims for general declaratory relief, the Court orders declaratory relief as
22   follows:

(1) Defendant Ross is responsible for fully and promptly remediating all contamination on the Garfield Express Site and is responsible for paying for the costs of such remediation.

(2) Defendant Ross is responsible for fully and promptly remediating all

contamination on the U-Haul Site to the extent ordered by the State of California Regional Water Quality Control Board – Los Angeles Region (the "Water Board") and is responsible for paying for the costs of such remediation.

(3) U-Haul is responsible for fully remediating all contamination on the U-Haul Site, and is responsible for paying the cots of such remediation, except as otherwise ordered by the Water Board (*i.e.*, if the Water Board orders remediation of the U-Haul Site by Ross).

(4) "Contamination" in this declaratory relief order refers to contamination in the soil and groundwater due to releases of petroleum hydrocarbons and chlorinated solvents, including PCE and TCE.

(5) To the extent not incompatible with the findings and orders of the Water Board, "remediation" includes, but is not limited to all steps needed to fully remediate, such as: (a) the development and implementation of work plans to fully define the horizontal and vertical extent of contamination, including both free phase (free product) and dissolved phase contamination; (b) the preparation of a site assessment report defining the horizontal and vertical extent of contamination present; (c) the development and implementation of a corrective action plan to address the full extent of contamination present, including both free phase (free product) and dissolved phase contamination; (d) the operation and maintenance of all equipment and remedial systems associated with the corrective action plan; (e) the prompt removal and disposal of debris and waste generated in the course of performing required activities; and

    (f) the performance and reporting of monitoring until completion of the corrective action plan.

(6) U-Haul is not responsible for damages, losses, attorneys fees or other costs on the Garfield Express Site due to contamination.

(7) The multi-phase extraction remediation method set forth by Ms. Bice in her testimony is acceptable, unless otherwise ordered by the Water Board.

Dated: February 12, 2009

                                  /s/ Valerie Baker Fairbank
                                  Valerie Baker Fairbank
                                  U.S. District Judge